```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BROOKS BANKER,                      :
                                    :
                Plaintiff,          :    05 Civ. 4115 (MBM)
                                    :
     -against-                      :    OPINION & ORDER
                                    :
ESPERANZA HEALTH SYSTEMS, LTD.,     :
HUNT HEALTH SYSTEMS, LTD., P&G      :
ENTERPRISES, INC., MHTJ             :
INVESTMENTS, INC., FRIENDSHIP,      :
INC., JOSE MARTINEZ LILLIARD,       :
JOSE LUIS PEREZ RIOS, ENRIQUE       :
LOPEZ VERGANA, PATRICIA             :
McDONOUGH, GAIL GAINES, GARY        :
DAVIDSON and LORI DITTMAR,          :
                                    :
                Defendants.         :
-----------------------------------X
```

APPEARANCES:

BROOKS BANKER, ESQ.
(Plaintiff Pro Se)
551 Fifth Avenue
Suite 2800
New York, New York 10016
(212) 972-0620

DAVID C. HOLLAND, ESQ.
(Attorney for Defendants)
The Law Offices of Michael Kennedy
419 Park Avenue South
16th Floor
New York, New York 10016
(212) 935-4500

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Brooks Banker sues his former legal clients Esperanza Health Systems, Ltd., Hunt Health Systems, Ltd., P&G Enterprises, Inc., MHTJ Investments, Inc., and Friendship, Inc. (collectively, the "Business Defendants"), for unpaid attorney's fees under the Retainer Agreement between Banker and the Business Defendants. His legal theories are breach of contract, quantum meruit, and unjust enrichment. Banker also sues Jose Martinez Lilliard, Jose Luis Perez Rios, Enrique Lopez Vergara, Particia McDonough, Gail Gaines, Gary Davidson, and Lori Dittmar (collectively, the "Individual Defendants"), alleging common law fraud and fraudulent transfer in violation of N.Y. Debt. & Cred. §§ 273, 276 (McKinney 2001). Defendants filed a motion to dismiss Banker's claims pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, to transfer this case to the District Court for the Western District of Texas, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, defendants' motion to dismiss for lack of personal jurisdiction is granted.

I.

The following facts are drawn from the complaint and affidavits of all parties, because a motion to dismiss pursuant

to Fed. R. Civ. P. 12(b)(2) requires the resolution of factual issues that arise outside of the pleadings. CutCo Indus. Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995). The facts are construed in the light most favorable to the plaintiff non-movant. CutCo Indus., 806 F.2d at 365.

Banker is an attorney admitted to practice in New York. (Compl. ¶ 1) Esperanza and Hunt are both Texas limited partnerships that maintain offices at La Hacienda Treatment Center in Hunt, Texas. (Compl. ¶¶ 2, 3) Esperanza owns the operating assets of La Hacienda Treatment Center. (Compl. ¶ 14) Defendants P&G, MHTJ, and Friendship are all Texas corporations. (Compl. ¶¶ 4, 5, 6) Martinez, Perez, and Lopez maintain offices at La Hacienda Treatment Center and are on the executive committee of Esperanza. (Compl. ¶¶ 7, 8, 9, 15, 16) McDonough and Gaines maintain offices in Boerne, Texas, are on the executive committee of Esperanza, and are principals of Hunt, P&G, MHTJ, and Friendship. (Compl. ¶¶ 10, 11, 15, 16; Holland Aff. ¶¶ 24, 25) Davidson and Dittmar are certified public accountants with places of business in Texas who provide professional advice to Esperanza's executive committee. (Compl. ¶¶ 23, 25, 26, 27)

Beginning in 1993, Banker, as an attorney at the law firm Abberly Kooiman, LLP, served as counsel for Esperanza, Hunt,

P&G, MHTJ, and Friendship in Wechsler v. Hunt Health, a civil action in this court in which they are defendants. (Compl. ¶ 33) Abberly Kooiman dissolved in 2003 and, on June 1, 2003, McDonough and Gaines, on behalf of Esperanza, Hunt, P&G, MHTJ, and Friendship, entered into a written retainer agreement with Banker as a solo practitioner. (Compl. ¶¶ 28, 29, 37) Under the Retainer Agreement, Banker continued to represent Esperanza, Hunt, P&G, MHTJ, and Friendship in Wechsler. (Compl. ¶ 32, 37)

Banker met with Martinez, Lopez, Perez, McDonough and Gaines in Texas on September 28, 2003, and September 30, 2003, to discuss Weschler, and they did not suggest to Banker that they were dissatisfied with his work. (Compl. ¶¶ 86, 87) In October 2003, Martinez, Lopez, Perez, McDonough, and Gaines retained the law firm of Graves, Dougherty, Hearon & Moody ("Graves") in connection with Wechsler, and Graves requested from Banker documents and information concerning the case. (Compl. ¶¶ 88, 89) Graves attempted to negotiate a settlement with the Wechsler plaintiff without Banker's participation. (Compl. ¶¶ 92, 93) When Graves did not reach a settlement, McDonough and Gaines instructed Banker to represent Esperanza, Hunt, P&G, MHTJ, and Friendship in the bench trial. (Compl. ¶¶ 94, 102) Banker did so over a three-week period in October and November 2003, as well as throughout three months of post-trial submissions. (Compl. ¶ 48)

During the bench trial, Davidson traveled to New York

at Banker's request to consult with the Business Defendants and Banker. (Davidson Decl. at 3) Davidson also spoke by telephone with Banker while Banker was in New York, and sent mail and email to Banker in New York; while the litigation was active, the correspondence was daily, when it was inactive there was no communication. (Davidson Decl. at 3-4) Dittmar has never been to New York, and her only contact with Banker was providing him with documents. (Dittmar Aff. at 1) The only time McDonough, Gaines, and Lopez were physically present in New York was to attend the Wechsler trial. (Banker Aff. ¶¶ 19, 20) None of the other Individual Defendants ever have been physically present in New York.

In September 2004, McDonough and Gaines retained Texas attorney Kristine Arlitt ("Arlitt") to represent them as individuals. (Compl. ¶ 198) In November 2004, McDonough and Gaines retained Arlitt to represent Esperanza, Hunt, P&G, MHTJ, and Friendship. (Compl. ¶ 200) Banker believes that, beginning in November 2004, Arlitt met with Martinez, Lopez, Perez, McDonough, Gaines, Davidson, and Dittmar to discuss Weschler and formulate a plan to avoid paying Banker after inducing him to provide information about the case to Arlitt. (Compl. ¶¶ 212, 213, 217, 218) Banker alleges Davidson and Dittmar created the plan to defraud him, because a December 4, 2004 email from McDonough and Gaines to Banker stated "Davidson and [Arlitt] have arrived at a

4

plan." (Compl. ¶¶ 214, 215) Banker believes that as part of this plan, Martinez, Lopez, Perez, McDonough, Gaines, Davison, and Dittmar agreed to mislead Banker by making him believe he would be paid for his work. (Compl. ¶¶ 219, 220) Banker alleges also that, as a part of the plan, Martinez, Lopez, Perez, McDonough, Gaines, Davidson, and Dittmar agreed that Arlitt would settle Weschler without Banker's knowledge or participation. (Compl. ¶ 224) Banker also believes that Davidson and Dittmar advised Esperanza not to pay Banker, with the intention of keeping for themselves a share of the money owed to him for legal services. (Compl. ¶¶ 240-43) Banker does not allege that any of the events involved in this plan to defraud him took place in New York.

On January 14, 2005, Martinez, Lopez, Perez, McDonough, and Gaines attended a mediation of Weschler in San Francisco before a mediator who Banker believes Arlitt located. (Compl. ¶¶244, 246) The mediation was planned, scheduled, and held without Banker's knowledge or participation. (Compl. ¶¶ 247, 244) During the mediation, an attorney in Arlitt's office contacted Banker to request information and advice. (Compl. ¶¶ 250, 252) On January 14, 2005, Banker believes that McDonough and Gaines, while in California, executed a settlement agreement with Wechsler in the presence of Martinez, Lopez, and Perez, which provides that Banker will not be paid for his legal services. (Compl. ¶¶ 255, 257) The day the Weschler settlement was

5

executed, Eseperanza, Hunt Health, P&G, MHTJ, and Friendship wrote a letter to Banker firing him as their counsel; it was mailed on January 18, 2005. (Compl. ¶ 190, 193)

Neither Arlitt nor any of the defendants have communicated with Banker since January 21, 2005, and Banker was never told the terms and conditions of the January 14, 2005, settlement. (Compl. ¶¶ 263, 264) On January 21, 2005, Michael Kennedy appeared in <u>Wechsler</u> as counsel for Esperanza, Hunt, P&G, MHTJ, and Friendship and Banker was granted leave to withdraw as counsel of record for Esperanza, Hunt, P&G, MHTJ, and Friendship. (Compl. ¶¶ 266, 270)

Banker and Esperanza, Hunt, P&G, MHTJ, and Friendship entered into an installment payment plan for Banker's attorney's fees in connection to <u>Wechsler</u> in 2003, because the defendants did not have sufficient assets to pay Banker immediately. (Compl. ¶¶ 105, 106, 151) However, Banker alleges that during the time he was receiving partial payments, Martinez, Lopez, Perez, McDonough, and Gaines each received direct or indirect income from Esperanza of at least $400,000 a year. (Compl. ¶ 114) Esperanza, Hunt, P&G, MHTJ, and Friendship regularly made payments to Banker for his legal services between July 28, 2003, and January 4, 2005. (Compl. ¶¶ 151-179) Esperanza, Hunt, P&G, MHTJ, and Frienship never paid Banker's attorney's fee statements of January 4, 2005, and January 18, 2005, which are for the legal

services rendered from December 1, 2004, until January 14, 2005. (Compl. ¶¶ 178, 183, 188). The last payment Banker received from defendants was on December 10, 2004. (Banker Aff. ¶ 13) Banker claims Martinez, Lopez, Perez, McDonough, and Gaines each received financial distributions from Esperanza from November 2004 through March 2005. (Compl. ¶¶ 272-276)

Banker filed the summons and verified complaint in this action in March 24, 2005, in the Supreme Court of the State of New York, County of New York. (Holland Aff. ¶ 3) Gaines and McDonough were served in their individual capacities by mail on March 25, 2005, and in person on April 11, 2005. (Holland Aff. ¶¶ 7, 8) Gaines was served by mail at the offices of P&G, MHTJ, and Friendship. (Holland Aff. ¶¶ 7, 18, 19, 20) Davidson was served individually by mail on March 25, 2005, and served personally on April 8, 2005. (Holland Aff. ¶ 9) Dittmar was personally served on April 11, 2005 (Holland Aff. ¶ 10).

On April 25, 2005, all defendants filed a Notice of Removal Pursuant to 28 U.S.C. § 1446(a). (Holland Aff. ¶ 11) As of May 2, 2005, McDonough and Gaines were not aware that Banker had served papers upon any of the Business Defendants. (McDonough Aff., Gaines Aff.) Martinez, Perez, and Lopez are all residents of Mexico who maintain offices at La Hacienda Treatment Center in Hunt, Texas; although named as defendants in this suit none of them have been served. (Holland Aff. ¶ 43, 44)

7

II.

Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 (2000). Banker is a New York resident with his primary place of business in New York. (Compl. ¶ 1) Esperanza, Hunt, P&G, MHTJ, and Friendship all have their principal place of business in Texas and are not alleged to be incorporated or registered in New York. (Compl. ¶¶ 2-6) McDonough, Gaines, Dittmar, Davidson, Martinez, Lopez, and Perez all maintain offices in Texas and are residents of Texas or Mexico. (Compl. ¶¶ 7-13, McDonough Aff. at 1, Gaines Affid. at 1, Davidson Decl. ¶2, Dittmar Aff. at 1, Holland Aff. ¶¶ 21-23) Banker seeks damages well in excess of $75,000. (Compl. ¶¶ 298-300) Under 28 U.S.C. §1446(d), this court took jurisdiction over this case on the date the notice of removal was filed with the clerk of the state court by the defendants and plaintiffs were given written notice of the removal, which was done on April 25, 2005, and will retain jurisdiction unless and until the case is remanded.

III.

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendants" by a preponderance of the evidence. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).

8

Where, as here, the issue of personal jurisdiction is addressed without the benefit of an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction -- i.e., 'an averment of facts, that if credited . . . would suffice to establish jurisdiction over the defendant.'" Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d 334, 339 (S.D.N.Y. 1998) (quoting Metro. Life Ins. Co., 84 F.3d at 567). At the motion to dismiss stage, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor. . .." A.I. Trade Fin. Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

Personal jurisdiction over non-resident defendants is determined by the law of the jurisdiction in which the federal district court sits. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). For this court to have personal jurisdiction over the Business and Individual Defendants, New York law must provide a basis for exercising personal jurisdiction and such jurisdiction cannot offend federal standards of due process. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).

A. N.Y. C.P.L.R. 313

Defendants argued initially that this court lacks personal jurisdiction over Martinez, Perez, Lopez, Esperanza,

9

Hunt, P&G, MHTJ, and Friendship under N.Y. C.P.L.R. 313 (McKinney 2001), because Banker did not properly serve any of them with a summons. On October 17, 2005, the parties participated in a conference with the court and a traverse hearing was scheduled to determine whether the aforementioned defendants were properly served with process. However, in a letter to the court dated October 21, 2005, Defendants' counsel "waive[d]" the traverse issue. Thus, the court need not address those claims and they are waived by defendants.

B. N.Y. C.P.L.R. 302(a)(1)

Plaintiff argues that there is personal jurisdiction over the Business Defendants under New York's long arm statute, N.Y. C.P.L.R. 302(a)(1). To establish personal jurisdiction pursuant to N.Y. C.P.L.R. 302(a)(1), Banker must show (1) that defendants transacted business within New York and (2) that the claim arises from that transaction. See Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). A non-domiciliary transacts business within a state when he "purposefully avails [himself] of the privilege of conducting activities within [the state], thus invoking the benefits and protections of its laws." CutCo Indus., 806 F.2d at 365 (citation omitted). A single transaction in the state "may be sufficient to invoke jurisdiction, even if defendant never entered New York,

provided that the contact was purposeful and the totality of the circumstances indicate that the exercise of jurisdiction would be proper." Levisohn, 10 F. Supp. 2d at 339.

Banker argues personal jurisdiction pursuant to N.Y. C.P.L.R. 302(a)(1) over the Business Defendants, because they transacted business in New York when they hired a New York attorney to represent them in a New York court and all of their claims arise out of the hiring of that attorney. However, the "New York cases make clear that the 'mere fact of being a New York lawyer engaged to perform legal services in New York is [not] enough' to satisfy C.P.L.R. 302(a)(1)." Pennie & Edmonds v. Austad Co., 681 F. Supp. 1074, 1077 (S.D.N.Y. 1988) (quoting Perlman v. Martin, 70 Misc. 2d 169, 170, 332 N.Y.S.2d 360 (1972) (finding personal jurisdiction did not exist where client retained New York attorney by telephone from another state)).

Banker relies heavily on Levisohn, which held that a defendant transacts business in New York when he visits a law firm's New York office to negotiate a retainer agreement, prepares for a court hearing while in New York, makes telephone calls to New York, and sends correspondence to New York. Levisohn, 10 F. Supp. 2d at 340. However, the key fact that lead to a finding of personal jurisdiction in Levisohn was that the defendant client was present in New York during contract negotiations. See Id. When "'a defendant has entered the state,

11

even for one day, to negotiate and execute the contract on which suit is eventually brought, § 302(a)(1) gives jurisdiction.'" Id. (quoting Mayes v. Leipziger, 674 F.2d 178, 183 (2d Cir. 1982). "[I]f negotiations take place in New York that 'substantially advance' or are 'essential' to one's formation of a business agreement, such activity will constitute a legally sufficient basis for jurisdiction under § 302(a)(1)." Current Textiles Corp. v. AVA Indus., Inc., 624 F. Supp. 819, 820 (S.D.N.Y. 1985) (citing Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 91 (2d Cir. 1975).

Generally, courts will find jurisdiction over a non-domiciliary defendant being sued for fees by his former attorney only when the retainer agreement between the lawyer and the client was at the very least negotiated in New York. See, e.g., Lehigh Valley Indus., 527 F. 2d at 91 (finding personal jurisdiction over client defendants who met with attorneys in New York to negotiate the terms of the representation); Milgrim Thomajan & Lee P.C. v. NYCAL Corp., 775 F. Supp. 117, 120 (S.D.N.Y. 1991) (finding personal jurisdiction over client defendants who met with attorneys in New York to negotiate the terms of representation); Current Textiles Corp. v. AVA Indus., Inc., 624 F. Supp. 819, 820 (S.D.N.Y. 1985); Fly, Shuebruk, Gaguine, Boros & Braun v. Marcus, No. 94 Civ. 543, 1996 WL 109269, at *3 (S.D.N.Y. Mar. 13, 1996) (finding jurisdiction over

12

non-domiciliary client when that client entered into a contract with the attorney in New York, the contract was largely performed in New York, and the defendant repeatedly met with plaintiff in New York); Kaczorowski v. Black and Adams, 293 A.D.2d 358, 741 N.Y.S.2d 28 (1st Dep't 2002) (finding personal jurisdiction when non-domiciliary client solicited attorney in New York to bring an action in New York and consulted repeatedly in New York with attorney before retaining him); Shaw, Licitra, Bohner, Esernio, Schwartz & Pfluger, P.C. v. Lefkowitz, No. 10767/01, 2002 WL 1969237 (N.Y. Dist. Ct. Aug. 15, 2002) (finding long-arm jurisdiction over a client because she chose to retain the attorney to prosecute, as opposed to defend, claims, met with him in New York for their initial consultation, and all of the legal services rendered involved matters pending in the Courts of the State of New York).

A contract negotiated and executed via telephone while defendants were not in New York is insufficient to establish jurisdiction in New York. Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965) (holding that negotiation and execution of contracts by mail and telephone with persons residing in New York was insufficient basis for personal jurisdiction over non-domiciliaries); Hennigan v. Taser Int'l, Inc., No. 00 Civ. 2981 (MBM), 2001 WL 185122, at * 3 (S.D.N.Y. Fed. 26, 2001).

13

The present case is distinguishable from the cases where personal jurisdiction was found, because Banker makes no claim that the Retainer Agreement between himself and the Business Defendants was negotiated or signed in New York. Additionally, the present case differs from those cases where jurisdiction was found, because here the Business Defendants hired Banker to represent them as defense counsel in an action brought in this court, as opposed to hiring him to prosecute claims as was done in Shaw and Kaczorowski. See also Pennie & Edwards, 681 F. Supp. at 1078. (finding personal jurisdiction over non-domiciliary client because, among other reasons, he purposefully chose to hire New York counsel to prosecute litigation in Maryland). The Business Defendants did not hire Banker to prosecute claims they initiated in New York; they had to hire New York counsel to defend a suit that was brought in New York through no choice of theirs.

Furthermore, telephone or written communications, such as email, sent into New York, standing alone, do not provide a sufficient basis for personal jurisdiction under N.Y. C.P.L.R. 302(a)(1) unless "they are used by the defendant to actively participate in business transactions in New York." Carlson v. Cuevas, 932 F. Supp. 76, 78 (S.D.N.Y. 1996); see also Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd., 147 A.D.2d 327 (N.Y. App. Div. 1989) (finding personal

jurisdiction where non-domiciliary client retained New York counsel to provide services in connection with legal proceedings in New York, client communicated 93 times by telephone with attorney in New York, sent letters into New York, participated in settlement negotiations by telephone conference calls, and had an open telephone line into a meeting in New York).

The sporadic email and telephone conversations between Banker and the Business Defendants do not rise to a level such that any of the Business Defendants can be said to be "actively participating" in business transactions in New York.  The only business they transacted in New York was assisting their attorney in preparing to defend them at a trial in New York.  Banker does not allege that the Business Defendants participated in New York meetings via conference calls or that email or telephone communication was extensive or initiated by the Business Defendants.  In fact, the communications between Banker and the Business Defendants would cease completely at the times when trial or some other legal proceeding was not immediately pending. (Davidson Decl. at 3-4)

Thus, this court does not have personal jurisdiction over the Business Defendants under N.Y. C.P.L.R. 302(a)(1), because the Business Defendants did not negotiate or enter into the Retainer Agreement in New York, did not attend meetings with Banker in New York, and did not actively participate in business

15

transactions in New York through email, telephone, or other means of correspondence.

C. <u>N.Y. C.P.L.R. 302(a)(3)</u>

Plaintiff argues there is personal jurisdiction over the Individual Defendants under N.Y. C.P.L.R. 302(a)(3), which provides in pertinent part:

> . . . a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state, . . . if he . . . (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

Thus, to establish personal jurisdiction under 302(a)(3), Banker, among other things, must sufficiently allege that the Individual Defendants' conduct caused injury within New York. This he is unable to do.

An injury does not occur within New York merely because that is where the plaintiff resides or where he suffered economic loss. <u>Bank Brussels Lambert</u> v. <u>Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 791 (2d Cir. 1999) ("[C]ourts determining whether there is injury in New York sufficient to warrant 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which

16

asks them to locate the original event which caused the injury.") (citation and quotation marks omitted). "[T]he situs of an injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (quoting Carte v. Parkoff, 152 A.D.2d 615, 616, 543 N.Y.S.2d 718 (2d Dep't 1989)).

Thus, the Second Circuit declined to extend jurisdiction under N.Y. C.P.L.R. 302(a)(3) over non-domiciliary clients sued by their New York attorney based on their alleged tortious conduct outside New York, because "the alleged injury does not arise out of the legal services provided, but out of [the client's] alleged failure to pay for such services." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001). The relevant event which caused the injury in Whitaker was "either the structuring of the partnership sale to avoid payment [to Whitaker] or the actual withholding of payment to Whitaker, both of which occurred outside New York," thus the situs of the injury was not in New York. Id. (quotation marks and citation omitted).

The present case is nearly identical to Whitaker. Banker alleges that the Individual Defendants committed tortious acts outside New York by conspiring to deprive him of fees for services he rendered in New York. Banker then, again similar to

17

Whitaker, alleges that the event giving rise to his fraud claims was his tendering of legal services in New York. However, as in Whitaker, the situs of his injury is not where he tendered the legal services; the situs of Banker's injury is where the Individual Defendants devised and carried out their alleged plan to deprive him of payment for his services, which according to Banker's complaint was in Texas and California. Thus, as in Whitaker, the plaintiff here suffered no injury within New York and the Individual Defendants are not subject to personal jurisdiction under N.Y. C.P.L.R. 302(a)(3).

VI.

Defendants also have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, for improper venue, and, in the alternative, to transfer this case to the District Court for the Western District of Texas. Because Banker's complaint must be dismissed for lack of personal jurisdiction as to both the Business and Individual Defendants, it is unnecessary to consider the issue of venue or failure to state a claim. In particular, I deny the transfer motion because, as noted, this case initially was filed in state court and removed. Accordingly, Banker may prefer another state forum to a federal court in Texas.

\*             \*             \*

For the reasons set forth above, defendants' motion to dismiss for lack of personal jurisdiction is granted. Defendants' motion to transfer is denied on the merits and their other motions are denied as moot.

SO ORDERED:

*[signature]*

Dated: New York, New York
November 17, 2005

Michael B. Mukasey
U.S. District Judge